The next matter is number 161412 Boston Taxi Owners Association Incorporated et al v. William Evans, Boston Police Commissioner. Thank you. Good morning. May it please the court, my name is John Boccia and I represent the appellant, Boston Police Commissioner William Evans. With the court's permission, I would ask two minutes for a rebuttal. Thank you, your honor. Commissioner Evans is entitled to qualified immunity because it was not and to date is not clearly established that taxis and transportation network companies or TNCs are similarly situated under the Equal Protection Clause or that there was no rational basis for treating them differently. Commissioner Evans is also entitled to qualified immunity because the plaintiffs have simply not pled the requisite elements of an Equal Protection Claim at all, particularly the discriminatory intent element. The qualified immunity standard is well known to the court. The plaintiffs must plead facts alleging the violation of a constitutional right and they must also plead that that constitutional right was clearly established at the time of the alleged violation. The second inquiry has two subparts. One concerns the clarity of the law. The second concerns the specific facts of the case at bar. Could you help me with how exactly the law works? Your client is enforcing the law here. As I understand it, if you want to have a right to be physically hailed by prospective passengers and use taxi stands and invite physical hailing with a sign, you need to comply with the taxi regulations. But if you don't want to do those things and you agree to be prohibited from doing them, then you don't have to apply with all those. You have some other things you have to do. I think that's right. I think Your Honor is getting into whether these entities are similarly situated factually. The key distinction, a distinction which has been pointed out by most recently the Seventh Circuit's decision in October 2016 addressing this issue, the key distinction is that traditional taxi cabs have the exclusive right to engage in street hails, whereas TNCs only do prearranged... Can the taxi cab owners, if they want to, can they operate like the TNCs do just by giving up the right to do street hails and taxi stands? I think they could if they so chose. If the TNCs wanted to do hails, could they do that as long as they applied with a taxi? In other words, does everybody have the same choice? They can either be a TNC and not do the street hails or they can be a taxi and do the street hails. Rule 403 has long applied to traditional taxis and has provided an exclusive right to those taxis, and frankly a protectionist right for those taxis to engage in very specific types of transactions. One example is ad hoc street hails, a transaction in which in a street hail a taxi user has no preexisting relationship. They simply raise their hand and they may summon and hail a taxi cab on the street. A TNC conversely has a prearranged contractual relationship. A TNC customer gives personal information. They set up an account. They submit payment information to the TNC. Then they use an app, an electronic app, to summon the TNC to pick them up. That is fundamentally different from the exclusive right which taxis have long enjoyed, an exclusive privilege within the city of Boston under Rule 403, to engage in street hails. And more broadly, I think it's really important in this case to note the competitive nature of this business, and frankly it is an issue of consumer choice. Many consumers may prefer to do street hails because of their convenience. They could be walking along the sidewalk and simply raise their hand to summon a taxi. Other consumers making their decisions as to what source of for hire transportation they would like to use may prefer an app. That is a decision based on consumer choice. The Seventh Circuit's decision on this point is very well reasoned in Commissioner Evans' opinion. This is a matter of consumer choice rather than a situation where the Equal Protection Clause has to treat all of these entities exactly the same. One point I want to touch on, without losing sight of the clearly established inquiry here, is that in the District Court's February 5, 2015 ruling denying the plaintiff's motion for a preliminary injunction, the District Court said it is not self-evident that traditional taxicab operators and TNCs are similarly situated in the context of equal protection. And in summary, there are significant distinctions between their business models that permit state or local authorities to treat them differently without implicating the Equal Protection Clause. So shortly after this litigation was filed, about two weeks after it was filed, the District Court then said they were not similarly situated. Now, of course, 13 months later, in March of 2016, the District Court said the situation had evolved. But that is fundamentally inappropriate for qualified immunity. A court that says an issue has evolved over time is not clearly established by definition. Counsel, I'm sorry. Sure. On the similarly situated issue, can you just enlighten me on what the briefs are referring to when they say that taxis now electronically hail in a manner similar to the way the TNCs did? My understanding is that traditional taxis now also have an electronic system by which a traditional taxi consumer can use an electronic app to summon the taxi to pick them up in the same way that TNCs do. That does not change, however, the fact that traditional taxis retain the exclusive right to engage in street hails. There's no argument that TNCs are permitted to engage in street hails. So that is a fundamental difference which has been recognized by the Seventh Circuit, by the D.C. District Court in the Gebre Selassie case, and by the Joe Sanfilippo Cabs case from Milwaukee. The three decisions on the books as of today that have considered the equal protection issue, and they have all noted this distinction that traditional taxis retain the exclusive right to engage in street hails. Thus, they are different business models. And just one other question. What are we talking about as far as market share per type in Boston? I am not sure of the answer to that, Your Honor. I'd be happy to look into that for you. I am not sure where that comes out as of today. In addition to the status of the case law that treats taxis and TNCs differently under saying that they are not similarly situated, I also want to take a few minutes to address Rule 403, which is the City of Boston rule. Notably, that rule was promulgated in 2008 by a different police commissioner than Commissioner Evans. And remember, Commissioner Evans is sued in his personal capacity, yet he wasn't even the one who promulgated this rule. And that rule purports to regulate the hackney carriage industry within the City of Boston. By its definition, a hackney carriage is defined as a, also known as a taxi or taxi cab. So a reasonable public official, considering whether TNCs, this new market entrant, which was not even operating in 2008 when this rule was last promulgated. Police charged with enforcing it equally. It doesn't matter if he's not the one who promulgated it. He took over the responsibility of enforcing the rule. And for purposes of the clearly established inquiry, under the Qualified Immune Analysis, I do not think it was at all clear that this pre-existing rule, which predated the existence and operation of TNCs, and which defines a hackney carriage as a taxi or taxi cab, I don't think that would be clearly established to a reasonable public official, that this rule automatically would apply to a new market entrant.  As a result, Mass. Department of Transportation regulations, new regulations were promulgated that created a third vehicle registration category for TNCs. So a reasonable public official seeing taxis, livery vehicles, and TNCs under Mass. Department regulations would not treat them all the same. I'll reserve the rest of my time.  Ms. Bigham, good morning. Good morning, your honors. My name is Jennifer Pinkham, and I represent the Appellee's Boston Taxi Owners Association. As my brother just mentioned, this issue is very narrow for the court, and that is whether or not the police commissioner in the city of Boston is entitled to qualified immunity on the plaintiff's equal protection claims. Qualified immunity is protection for government officials from civil liability, as you all know. With three courts going the other way, how can it be clearly established? That's a great question, your honor. And my argument to you is that the city of Boston has specific regulations, ordinances, and laws on books, unlike those other cities. In fact, your honors, we'll see in my papers and in my brief and in the appendix that it was specifically clear that it not only addressed taxi cabs, but any other private vehicle. That is the law, clearly. That's a good question, your honor. With respect to livery, this is on-demand transportation. TNCs, taxis, it's on-demand. You're either hailing on the street or you're hailing with a button on your phone. The livery would fit under the, if you read the regulation, up until you get to the end where it says, basically, by the way, we mean taxi cabs, livery would fit under that perfectly. I think it wouldn't because liveries are typically pre-arranged travel. Not all the time. Not all the time, your honor, but typically they are. But what about the times when they're not? Livery has a whole set of regulations that livery vehicles do have to adhere to, your honor. In 1930, the Massachusetts legislature decided that the city of Boston would have the ability to regulate vehicles in the city that are transporting people from place to place for hire. 86 years ago. It has been the law crystal clear ever since. Suppose we take your argument and say, okay, the city regulation was clear. But that doesn't get you where you need to go. Well, I think Judge Thompson's question was going to the point where it has to be clearly established that the conduct violates the United States Constitution, not that it violates some city reg. I agree. There's no case that says something like this violates the Constitution, or at least there are three that say it doesn't. How could it then be clearly established? Well, I think because the entities are similarly situated, we do have an equal protection claim here, your honor, and I think we have a valid equal protection claim. And I think that the services that these two groups provide, taxis and TNCs, are identical. They pick people up, they transport them for a fare based on distance, and they transport them within the city limits. Let me ask you about that, because as I understand it, all of your clients tomorrow, as long as they were willing to give up street hails and taxi stands, could be TNCs. Your honor, there's nothing in the regulations of 403 that say anything about street hails and the fact that taxis have the... But that's what the Commissioner has said. In other words, none of the TNCs are allowed to do street hails. I would agree with that. I would agree that none of the TNCs are allowed to do street hails. That's true. If they gave up street hails, they then would be similarly situated to the TNCs. Well, I think regardless of whether they have street hails or not, they're still similarly situated. They provide essentially the same services. Where is even the discrimination? If I'm the Commissioner and I go and I say, okay, you can be a taxi cab and be regulated and get to do street hails, or you can be a not-taxi cab, but you can't do street hails, you pick which you want to be. And your clients want to stay taxi cabs. The others, TNCs, don't want to be taxi cabs. How is there any discrimination there if both groups are given you can be in column A or you can be in column B just depending on whether you want to do street hails? There has to be a rational basis, Your Honor, between the differences in the regulations. The taxis have 53 pages of onerous regulations. TNCs do not have those. But that's only because they want to do street hails. But the regulations, Your Honor, do not rationally relate to street hails. The regulations relate to many other things that are not related to street hails. If they rationally related to the fact that taxis are going to pick somebody up on the street, for instance, they can only park in certain areas, or they have to abide by a certain speed limit when they're pulling into the street hail area, there could be a whole host of things, Your Honor. But these regulations, these 53 pages of regulations, don't rationally relate to the fact that the taxis have the unique ability to hail, to pick people up from street hail. And you have to have that rational basis. You cannot just have these onerous regulations without having a rational basis and them being tied to that particular issue. With respect to the law... So then it would cure your client's problem if we just got rid of the taxi regulations? Well, certainly deregulation... What we're looking for, Your Honor, is a level playing field. My clients want a level playing field. They want the same treatment for similarly situated businesses. If you have a Burger King and McDonald's and one has a drive-thru and one doesn't, they're still both regulated in the same way by the local town, right? They still have to procure a victor's license. They still have to do the same things. One might serve burgers that are fried and one might serve burgers that are grilled, but they have to do the same things. We're looking for a level playing field, Your Honor. That's fairness. That's equal protection. With respect to the law in the city of Boston, going back to that ordinance that's in place, the specific ordinance which you'll see at the appendix 235 and 236 states... So is there no value to the street hailing? There really isn't, Your Honor, anymore because very quickly, taxis are also using apps. They're in fact using an app called Uber Taxi, and it is put on by Uber, the same person that issued this TNC company. That Uber Taxi app allows the taxi drivers to sign up and provide information to the person that's getting picked up. And so they have several other apps in addition to Uber Taxi. Why don't they just become Uber drivers? That's what Judge Kiyota keeps trying to figure out. Why don't they just become Uber drivers? Because for 86 years, they've made substantial investments in a system. They've purchased medallions which are financed heavily. Now you're talking about a taking claim. Your Honor, that is part of our claim. That's not before. You're right, but she just asked the question I was trying to answer. The real question is, and it goes to what I was asking earlier, the city of Boston's got a menu with two items on it. If you want to do street hails, you get regulated as a taxi. If you don't want to do street hails, you don't get regulated as a taxi. Your clients don't like that menu. There has to be a rational basis. Well, it doesn't. You can have two menus. If you want to park in this area of the town, you pay parking. If you want to park over there, you don't have to pay parking fee. Everybody's treated the same. They get to choose parking space A or parking spot B. Your clients get to pick either. But they don't want to give up the street hailing, apparently, or else they could compete. They couldn't compete, Your Honor, because they made a substantial investment and it played by these rules that the city has created. But that's your taking claim. That's part of our claim, Your Honor, yes. But with respect to the fact that the street hail is the be-all and end-all of this argument, I just totally disagree. I think that the street hail is going to be just go by the wayside. Everybody's going to hail using a phone. It's like the fax machine and other devices that have gone extinct. Is there no value to the parking stands? Very little. And, in fact, a lot of TNCs use parking stands now, and there's a lot of gypsy cabs out there on the roads, TNCs, that have some markings like a taxi but not all markings like a taxi, and they use these taxi stands as well, which is a very difficult thing for taxi drivers because they've invested a substantial amount of time and money to comply, and you have these TNCs that are operating as gypsy cabs pulling up to the stands and picking people up. And the city is not doing anything about that or enforcing the law whatsoever. They're just allowing complete lawlessness. So the mass legislature chose to pass laws regulating these TNCs. So that's the political process at work. Yes, Your Honor. On August 5th, Governor Baker did sign a new law regulating transportation network companies. That being said, the city still has the right to regulate traffic flow and traffic patterns, even despite the fact that that law was passed. How is that related to traffic flow and traffic patterns? The number of TNCs in the city operating is related to traffic flow and traffic patterns. They could limit the number of TNCs just like they limit the number of medallions. That relates to traffic flow. That relates to traffic patterns. In addition, many of the other things that taxis have to do, they have to have GPS monitoring so that the city can know where they are at all times. All these things that relate to traffic flow and traffic patterns, they have to do. We argue the TNCs should have to do that. But it's interesting. You've told us hailing is not worth much. And yet, the only reason your clients have to comply with these regulations is they want to hang on to hailing. I don't know that that's the case, Your Honor. They have to comply with these regulations. What other thing distinguishes them? As I understand it, the Commissioner has been saying the distinction they draw is the hailing and the business model. And if you just change those two things, which you tell us are inconsequential, you could do the same thing they're doing. We could, Your Honor. But again, we would be harmed by doing that. We're just asking for a level playing field. Well, you wouldn't be harmed because you have an investment in having the industry regulated. We've complied with the city's ordinances for eight or six years. The reason why this ultimately leads is the government couldn't deregulate any markets that it's previously regulated without paying takings claims to those who were in the regulated market. Your Honor, we're just looking for all similarly situated businesses to be treated equally, and we feel in this case we have been treated unequally. They've allowed TNCs to come into the city and operate in a completely lawless manner and turn a blind eye. Thank you. Thank you, Your Honors. May it please the Court, just three brief points. First, there is an assumption being made when we talk about Rule 403 that taxis and TNCs are similarly situated in the first place. For the reasons I've previously stated, particularly the street hails, they do not appear to be similarly situated, and three other courts have also found that to be the case.  While they are similarly situated, there is a rational basis for applying Rule 403, and rational basis is the test, as the plaintiffs have agreed throughout this litigation. That is primarily a public safety rationale. A person with no relationship to a taxi who simply raises their hand and gets into it on the street requires additional protection for public safety reasons, and that is why the city has long enforced Rule 403 against traditional taxi cabs, which goes along with their exclusive right to engage in street hails. Finally, Judge Thompson, you had asked about an act regulating transportation companies passed in July and August. Whatever the understanding and the ultimate interpretation of that act turns out to be, the very fact that we are debating that act and its import is yet another reason why Commissioner Evans is entitled to qualified immunity. The law is still not clearly established as we argue here today. The Court has no further questions. I will rest on the briefs. Thank you. Thank you. All rise.